UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

   v.

1. 16765 198th Avenue, Unit 58, Big Lake, Minnesota, and
2. 16765 198th Avenue, Unit 59, Big Lake, Minnesota,

        Defendants.

Case No. 26-cv-_____

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Daniel N. Rosen, United States Attorney for the District of Minnesota, and Craig Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn the defendants *in rem* to the use and benefit of the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) for violations of 18 U.S.C. §§ 1343 and 1957.

### THE DEFENDANTS *IN REM*

2. The defendants *in rem* are the following real properties, which are car condominium units located at a facility named the Big Lake Car Condos:

   a. 16765 198th Avenue, Unit 58, Big Lake, Minnesota, legally described as: Big Lake City, Section 22, Township 33.0; RG 27, Lot 4, Blk 2, Acres .04, Big Lake Car Condos Third Addition, Sherburn

County, Minnesota, with Property Tax Id. 65-00613-0220; and

    b. 16765 198th Avenue, Unit 59, Big Lake, Minnesota, legally described as: Big Lake City, Section 22, Township 33.0; RG 27, Lot 5, Blk 2, Acres .06, Big Lake Car Condos Third Addition, Sherburn County, Minnesota, with Property Tax Id. 65-00613-0225

(together, "the Defendant Real Properties").

3. The Defendant Real Properties have not been seized but are within the jurisdiction of this Court. The United States does not request authority from the Court to seize the Defendant Real Properties at this time. The United States will, as provided by 18 U.S.C. §§ 985(b)(1) and (c)(1):

    a. Post notice of this action and a copy of the Complaint on the Defendant Real Properties;

    b. Serve notice of this action on the owners of the Defendant Real Properties and any other person or entity who may claim an interest in the Defendant Real Properties, along with a copy of this Complaint; and

    c. File a notice of *lis pendens* in the county property records.

## JURISDICTION AND VENUE

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Real Properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the Defendant Real Properties under 28 U.S.C. § 1355(b). As is set forth below, the properties were purchased using

fraud proceeds, and they were involved in and are traceable to funds involved, in money laundering transactions.

6. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Real Properties are located in this District.

## FACTS

### I. OVERVIEW

7. This Complaint stems from an ongoing investigation into, among other things, a wire fraud scheme and money laundering conspiracy by John Roger Hill Jr. and others using a company known as Team All Trust (TAT). Hill and his co-conspirators espouse anti-government rhetoric and frivolous anti-tax rhetoric, which they use as the basis and marketing for their business through which they charge customers to provide fraudulent tax advice and preparation services that purport to enable their customers to avoid all taxation.

8. The Defendant Real Properties were purchased with proceeds of that fraud scheme and their purchases were violations of 18 U.S.C. § 1957, which prohibits monetary transactions that include the spending of more than $10,000 of proceeds of Specified Unlawful Activity, such as Wire Fraud. Because the Defendant Real Properties were purchased with proceeds of Wire Fraud and were involved in violations of § 1957, they are subject to forfeiture to the United States.

## II. BACKGROUND OF THE SCHEME

9. TAT is a Minnesota-based business that represents itself as a tax and trust advisory business. It engages clients who are primarily individuals, offering them a suite of services on a fee basis. These fees for services and products are often referred to as "donations" by TAT and its members. The services offered by TAT include tax preparation, trust preparation, and life insurance policies.

10. An investigation has revealed that TAT's business is a fraud. TAT sells its clients the lie that if a person organizes a trust and operates their affairs through the trust, the person's income is no longer taxable. With that lie at TAT's foundation, TAT defrauds its clients out of money, commits tax fraud against the IRS in TAT's clients' names, then launders the proceeds of the frauds through various trusts and bank accounts. TAT's workers and clients live across the nation.

11. Federal law enforcement agents have been investigating TAT and its leaders since 2023, when a Special Agent from the Internal Revenue Service received information from a person who had attended a TAT recruitment meeting. In that time, the investigation expanded to involve agents from FBI, IRS-Criminal Investigation, and the Treasury Inspector General for Tax Administration. Agents have interviewed multiple witnesses across several states, among other investigative steps.

### Team ALL Trust

12. TAT is registered with the state of Minnesota for the year 2025 as an Assumed Name entity. The Minnesota Secretary of State defines Assumed Name as "Any person conducting business under a name that is not their true full name" and

"A corporation, limited partnership, or limited liability company conducting business under a name other than the legal name."

13. The "NAMEHOLDER(S)," now recognized as "applicant" by the State of Minnesota, for the TAT Assumed Name filing is "All Team Trust," "Team All Trust," and "Trust Team All." The principal place of business registered for TAT is the address of Hill's mother, who also works for TAT. The email address given for official notices is jrhilltao@gmail.com.

14. TAT is not incorporated and operates under the name "Team All Trust" and "Team All Outdoors."

15. Hill runs TAT and is its main salesperson.

16. TAT does not claim to have any employees that work for the company. TAT states that anyone who works for TAT is a "trustee" and therefore not considered an employee. The "trustee" receives compensation from TAT in the form of a "donation." As identified through the investigation, the "donation" is monetary compensation for work completed by the trustee on behalf of TAT.

17. The investigation has shown that most workers at TAT serve as tax preparers.

### Team ALL Trust Schemes

18. TAT's business is the promotion of fraudulent tax schemes. One of these schemes is creating irrevocable, non-statutory charitable (INSC) trusts for its clients as a way to avoid paying income taxes.

19. After the INSC trusts are created, a bank account is set up in the name of the trust. The clients are then told to donate all their income to the trust.

20. Even though the funds are moved to the trust, the clients still have full access to the funds and control the trusts. The clients then use the funds in the trust for their personal expenses.

21. The clients are told by Hill to claim the funds they transfer to the trust as "donations" to a charitable entity on their individual income tax returns.

22. These supposed donations have the effect of offsetting the client's taxable income on their tax returns. By doing this, Hill claims the clients won't have any taxable income and therefore won't pay income taxes.

23. The investigation has shown that Hill directs TAT clients to donate all of their wages into a INSC trust which the client controls in order to effectively zero out their taxable income.

24. Representatives of TAT assist TAT's clients in preparing false tax returns. They also assist in the preparation of amending their clients' tax returns for three prior tax years. This frivolous charitable trust scheme is common among individuals who espouse anti-tax rhetoric.

25. TAT's business model is to charge clients a fee for TAT's services and products. These services and products include trusts, tax preparation, declaration of status filings, Montana license plates, five-star passports, and life insurance policies. All the services and products TAT offers have a sovereign citizen ideology behind them and supposedly assist the purchaser in privatizing their life, purportedly

6

sheltering them from taxes and removing themselves as a United States citizen to a "private national citizen."

26. TAT instructs clients to pay for their services by either writing a physical bank account check, wire transferring funds, paying via online finance platforms, financing through the company (TAT) or paying with cash.

27. Multiple witnesses have purchased a trust from TAT via check or wire transfer and were instructed to direct the payment to "TAO Capital Trust."[1] "TAO Capital Trust" has possessed checking accounts at Wells Fargo Bank and Bank of America from which the Defendant Real Properties were purchased.

28. The account from Wells Fargo Bank was permanently "shut down" for "business purposes" according to the investigation. Per financial reports, between December 2022 and April 2025, at least $3.5 million was deposited into TAT's bank accounts.

29. "KOABD Legacy Trust" held a bank account at Wells Fargo until it was shut down for "business purposes." It subsequently opened an account at Bank of America. Hill is the signer on the KOABD Legacy Trust bank account.

30. The KOABD Legacy Trust bank accounts received approximately $3.1 million in transferred funds from the TAO Capital Trust bank account.

---

[1] "TAO" is an acronym for Team All Outdoors, a company incorporated to "John Hill Jr" at an address in Coon Rapids, Minnesota.

31. The KOABD Legacy Trust has paid approximately $178,000 through Zelle, an online payment network platform which allows account owners to transfer funds between bank accounts through an online network. Through the investigation, it was identified that Hill pays TAT employees from the KOABD Legacy Trust bank account utilizing Zelle. Additionally, some client payments have been deposited into the KOABD Legacy Trust bank account via Zelle.

32. Hill has withdrawn approximately $987,000 in cash from the KOABD Legacy Trust bank account since December 2022 to April 2025.

**HILL'S PURCHASE OF THE DEFENDANT PROPERTIES**

33. As set forth above, Hill has received substantial profits from the fraud scheme conducted by TAT and the related entities he controls.

34. Hill used proceeds of the fraud to purchase two car condos in Big Lake, Minnesota. Specifically, he purchased Unit 58 and Unit 59 at the Big Lake Car Condos, which is located at 16765 198th Ave, Big Lake, Minnesota.

35. The Big Lake Car Condos complex is owned by R. H. According to an April 30, 2024, purchase agreement between Hill and R.H., Hill agreed to purchase Unit 58 and Unit 59 under the name KOABD Legacy Trust for $525,000.

36. The agreement states that Hill had to put down $40,000, pay $10,000 per month from May 2024 to November 2024 and then pay a balloon payment on November 1, 2024, of $425,000. This agreement was signed by both Hill and R.H.

37. While the agreement shows that KOABD Legacy Trust was purchasing the car condos, Sherburne County records show that Hill purchased car condo Unit

8

58 in the name of "16765 198th Avenue Unit 58 Trust," and car condo Unit 59 in the name of "16765 198th Avenue Unit 59 Trust."

38. As part of the purchase of the car condos in 2024, R.H. received a trust from TAT named Arago Legacy Trust. As stated above, Hill controls a trust named KOABD Legacy Trust.

39. Hill uses the KOABD Legacy Trust bank account to make large purchases. In December 2024, two checks were written from KOABD Legacy Trust's bank account for $250,000 and $135,000. These checks were written to Arago Legacy Trust. KOABD Legacy Trust's bank account also made wire transfer payments of $3,000, $3,000 and $2,000 to the Big Lake Car Condos in December 2024. These transfers mention that they were loan payments.

40. The $250,000 check and the $135,000 checks were both funded with proceeds traceable to the Hills wire fraud scheme described above.

41. In addition, both of those checks are financial transactions through which more than $10,000 of fraud proceeds were spent through a financial institution.

42. Both checks, therefore, constitute money laundering violations under 18 U.S.C. § 1957.

43. On December 11, 2025, agents conducted a search warrant on Big Lake Car Condo Unit 58 and Unit 59 where they found and seized several vehicles belonging to Hill.

44. On February 12, 2026, a witness texted one of the investigators the following photo and informed the investigator they were told the car condos being sold

were Hill's units. The individual posting the offer to sell the car condos is a known client of TAT.



45. As of March 5, 2026, the Sherburne County Recorder's Office did not reflect a recent sale of the Defendant Real Properties. And as of March 6, 2026, the property manager at the association for the car condos stated they were not aware of any recent sale of the two subject car condo units. On March 6, 2026, R.H. was not aware of Hill selling the car condo units.

**BASIS FOR FORFEITURE**

**COUNT 1 -
18 U.S.C. § 981(A)(1)(C) for Violations of 18 U.S.C. § 1343**

46. The actions described above constitute wire fraud in violation of 18 U.S.C. § 1343.

47. Civil forfeiture of the proceeds of a wire fraud scheme is authorized by 18 U.S.C. § 981(a)(1)(C).

48. More specifically, § 981(a)(1)(C) authorizes forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(A) defines the term "specified unlawful activity" as including "any act or activity constituting an offense listed in section 1961(1) of this title." And 18 U.S.C. § 1961(1) includes violations of 18 U.S.C. §§ 1343 in its definition of racketeering activity.

49. The Defendant Real Properties constitute, and are derived from, proceeds of a wire fraud scheme, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT 2
## 18 U.S.C. § 981(A)(1)(A) – for Violations Of 18 U.S.C. § 1957

50. Pursuant to 18 U.S.C. § 981(a)(1)(A), the United States is authorized to forfeit "any property, real or personal, involved in a transaction . . . in violation of section 1957… of this title, or any property traceable to such property."

51. 18 U.S.C. § 1957(a) prohibits among other things, knowingly engaging in a monetary transaction in criminally derived property of a value of more than $10,000, when such property derived from a specified unlawful activity.

52. Wire fraud is specified unlawful activity pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

53. The Defendant Real Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they were each involved in, or are traceable to property involved in, money laundering transactions in violation of 18 U.S.C. § 1957.

## CLAIM FOR RELIEF

54. The United States requests notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant Real Properties, that the Defendant Real Properties be forfeited and condemned to the United States of America, that the United States be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated: 3/6/2026

DANIEL N. ROSEN
United States Attorney

 s/Craig Baune
BY: CRAIG R. BAUNE
Attorney ID No. 331727
Assistant United States Attorneys
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
craig.baune@usdoj.gov

## VERIFICATION

I, Michael Leach, verify and declare under penalty of perjury as follows:

I am and have been a Special Agent with the Internal Revenue Service, Criminal Investigations (IRS-CI) since 2008. I have read the foregoing Verified Complaint In Rem and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as an IRS-CI Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 3/6/2026

<u>s/Michael Leach</u>
MICHAEL LEACH
Special Agent, IRS-CI