**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

          Plaintiff,

v.

1. 16765 198th Avenue, Unit 58, Big Lake, Minnesota;

2. 16765 198th Avenue, Unit 59, Big Lake, Minnesota;

3. $22,216.62 seized from Bank of America Account Number 3740 0875 3852 held in the name of TAO Capital Trust, John R. Hill Jr. Trustee;

4. $374,808.93 seized from Bank of America Account Number 3740 0047 8407 held in the name of KOABD Legacy Trust, John R. Hill Jr Trustee;

5. $600.00 seized from Bank of America Account Number 4350 2272 7059 held in the name of John R. Hill Jr.;

6. 2024 Ford Bronco Raptor, with VIN 1FMEE0RR8RLB47053;

7. 2023 Ford F-150 Raptor Supercrew, with VIN 1FTFW1RJ9PFA93683;

8. 2021 Land Rover, Range Rover Westminster, with VIN SALGS2RU2MA452986;

9. 2015 Volkswagen Golf TDI, with VIN 3VW2A7AUPFM062211;

10. 2015 Volkswagen Golf Sport TDI, with VIN 3VWCA7AU6FM500574;

Case No. 26-cv-1767
(PJS/ECW)

11. 2020 Ford Shelby GT500, with VIN 1FA6P8SJ3L5502525;

12. 2021 Ford Shelby GT500, with VIN 1FA6P8SJ9M5500859;

13. 2023 Polaris Sportsman XPl000 ATV, with VIN 4XASXR95XPB146838;

14. 2024 Yamaha Zuma YW125 Scooter, with VIN RKRSEH9Y3RA005825;

15. 2023 Yamaha Zuma YW125 Scooter, with VIN RKRSEH9Y8PA004134;

16. 2022 Yamaha Zuma Scooter, with VIN RKRSEH9YXNA002558;

17. 2023 Yamaha XMax300 Motorcycle, with VIN MH3SH22Y2PK001201;

18. 2024 GMC Sierra 1500, with VIN 3GTPUCEK0RG190146;

19. 2023 GMC Yukon XL 1500 Denali, with VIN 1GKS2KKL9PR561314;

20. A Raptor Supercharger seized from 16765 198th Avenue, Unit 59, Big Lake, MN;

21. Miscellaneous equipment seized from 16765 198th Avenue, Unit 58, Big Lake, MN;

22. Miscellaneous Firearms and Ammunition Seized from 23100 Edison Court, Rogers, MN;

23. Miscellaneous Jewelry seized from 23100 Edison Court, Rogers, MN;

24. $20,051.00 U.S. Currency from 23100 Edison Court, Rogers, Minnesota; of which $13,525

was seized from a safe in bedroom, $4,190 on the dresser in bedroom, and $2,336 from a black bag on a desk;

25. Approximately 100,006,000 Vietnamese Dong seized from 23100 Edison Court, Rogers, MN;

26. Approximately 14,645,000 Iraqi Dinar seized from 23100 Edison Court Rogers, MN;

27. Approximately 1,202,000,000 in Zimbabwean Dollar Bills seized from 23100 Edison Court, Rogers, MN;

28. Approximately 1,450,001,900 in Venezuelan Bolivares seized from 23100 Edison Court, Rogers, MN;

29. Browning Desert Shadow .308 Caliber Rifle with Scope, serial number B340663 from 16765 198th Avenue Unit 58, Big Lake, MN.

Defendants.

## VERIFIED AMENDED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Daniel N. Rosen, United States Attorney for the District of Minnesota, and Craig Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit and condemn the defendants *in rem* to the use and benefit of the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) for violations of 18 U.S.C. §§ 1343, 1956 and 1957.

**THE DEFENDANTS *IN REM***

2.    The defendants *in rem* are the following property:

a.  16765 198th Avenue, Unit 58, Big Lake, Minnesota,

legally described as: Big Lake City, Section 22, Township 33.0; RG 27, Lot 4, Blk 2, Acres .04, Big Lake Car Condos Third Addition, Sherburn County, Minnesota, with Property Tax Id. 65-00613-0220;

b.  16765 198th Avenue, Unit 59, Big Lake, Minnesota,

legally described as: Big Lake City, Section 22, Township 33.0; RG 27, Lot 5, Blk 2, Acres .06, Big Lake Car Condos Third Addition, Sherburn County, Minnesota, with Property Tax Id. 65-00613-0225;

c.  $22,216.62 seized from Bank of America Account Number 3740 0875 3852 held in the name of TAO Capital Trust, John R. Hill Jr. Trustee;

d.  $374,808.93 seized from Bank of America Account Number 3740 0047 8407 held in the name of KOABD Legacy Trust, John R. Hill Jr Trustee;

e.  $600.00 seized from Bank of America Account Number 4350 2272 7059 held in the name of John R. Hill Jr.;

f.  2024 Ford Bronco Raptor, with VIN 1FMEE0RR8RLB47053, registered to 2024 Bronco Raptor B47053 Trust and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 59, Big Lake, MN;

g.  2023 Ford F-150 Raptor Supercrew, with VIN 1FTFW1RJ9PFA93683, registered to Team All outdoors LLC and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 59, Big Lake, MN;

h.  2021 Land Rover, Range Rover Westminster, with VIN SALGS2RU2MA452986, registered to Don Stables Jr., and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 59, Big Lake, MN;

i.  2015 Volkswagen Golf TDI, with VIN 3VW2A7AUPFM062211, registered to 15 VW Golf062211 Trust and in the possession of John Roger Hill, Jr. at 16765 198thAvenue, Unit 59, Big Lake, MN;

j.  2015 Volkswagen Golf Sport TDI, with VIN 3VWCA7AU6FM500574,

4

registered to 15 VW Golf TDI S500574 Trust and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 58, Big Lake, MN;

k.  2020 Ford Shelby GT500, with VIN 1FA6P8SJ3L5502525, registered to 20 Ford Shelby GT500 502525 Trust, and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 58, Big Lake, MN;

l.  2021 Ford Shelby GT500, with VIN 1FA6P8SJ9M5500859, registered as 21 Ford Shelby GT500 500859 Trust, and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 58, Big Lake, MN;

m.  2023 Polaris Sportsman XPl000 ATV, with VIN 4XASXR95XPB146838, registered to KOABD Legacy Trust and Team All Outdoors LLC, and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 58, Big Lake, MN;

n.  2024 Yamaha Zuma YW125 Scooter, with VIN RKRSEH9Y3RA005825, registered to KOABD Legacy Trust and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 59, Big Lake, MN;

o.  2023 Yamaha Zuma YW125 Scooter, with VIN RKRSEH9Y8PA004134, registered to 23 Yamaha YW125 MC004134 Trust, and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 59, Big Lake, MN;

p.  2022 Yamaha Zuma Scooter, with VIN RKRSEH9YXNA002558, registered to KOABD Legacy Trust, and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 59, Big Lake, MN;

q.  2023 Yamaha XMax300 Motorcycle, with VIN MH3SH22Y2PK001201, registered to KOABD Legacy Trust and in the possession of John Roger Hill, Jr. at 16765 198th Avenue, Unit 59, Big Lake, MN;

r.  2024 GMC Sierra 1500, with VIN 3GTPUCEK0RG190146, registered to Team All Outdoors, LLC and in the possession of Jovanna Funk at 724 Lexington Parkway S., Saint Paul, MN;

s.  2023 GMC Yukon XL 1500 Denali, with VIN 1GKS2KKL9PR561314, registered to Team All Outdoors, LLC and in the possession of Jovanna Funk at 724 Lexington Parkway S., Saint Paul, MN;

t. A Raptor Supercharger seized from 16765 198th Avenue, Unit 59, Big Lake, MN;

u. Miscellaneous equipment seized from 16765 198th Avenue, Unit 58, Big Lake, MN, including:
  i. WeCreat Vision 40W Laser Cutter;
  ii. WeCreat lnfared Laser and Solder Fume Extractor;

v. Miscellaneous Firearms from 23100 Edison Court, Rogers, MN, including:

  i. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000578;
  ii. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000581;
  iii. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000580;
  iv. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000579;
  v. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000574;
  vi. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000562;
  vii. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000582;
  viii. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000565;
  ix. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000575;
  x. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000563;
  xi. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000573;
  xii. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000571;
  xiii. APF-15 Multi caliber rifle with magazine, gun lock and user guide, bearing serial number SM000572;
  xiv. APF-15 Multi caliber rifle, bearing serial number SM000567;
  xv. Browning Arms Citori Special, bearing serial number JP07406YY;
  xvi. And all ammunition seized therewith.

w. Miscellaneous Jewelry seized from 23100 Edison Court, Rogers, MN, including:

   i. One Pair 14K diamond stud earrings, 1.0 carat total weight;
   ii. One Pair 14K diamond stud earrings, 1.0 carat total weight;

 x. $20,051.00 U.S. Currency from 23100 Edison Court, Rogers, Minnesota; of which $13,525 was seized from a safe in bedroom, $4,190 on the dresser in bedroom, and $2,336 from a black bag on a desk;

 y. Approximately 100,006,000 Vietnamese Dong valued at approximately $3,798.58, seized from 23100 Edison Court, Rogers, MN;

 z. Approximately 14,645,000 Iraqi Dinar valued at approximately $11,217.67, seized from 23100 Edison Court Rogers, MN;

 aa. Approximately 1,202,000,000 in Zimbabwean Dollar Bills seized from 23100 Edison Court, Rogers, MN;

 bb. Approximately 1,450,001,900 in Venezuelan Bolivares seized from 23100 Edison Court, Rogers, MN;

 cc. Browning Desert Shadow .308 Caliber Rifle with Scope, serial number B340663 from 16765 198th Avenue Unit 58, Big Lake, MN ("the Defendant Properties").

3. Defendant items (a) and (b) are real property, specifically car condominium units located at a facility named the Big Lake Car Condos ("Defendant Real Properties"). The Defendant Real Properties have not been seized but are within the jurisdiction of the Court. The United States does not request authority to seize the Defendant Properties at this time. The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

 a. Post notice of this action and a copy of the Amended Complaint on the Defendant Real Properties;

 b. Serve notice of this action on the owners of the Defendant Real Properties and any other person or entity who may claim an interest in

the Defendant Real Properties, along with a copy of this Complaint; and

c. File a notice of *lis pendens* in the county property records.

4. The remaining Defendant Properties have been seized by the United States. All of the seized Defendants Properties were seized in the State of Minnesota and are in the custody of the United States Marshals Service.

## JURISDICTION AND VENUE

5. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the Defendant Properties under 28 U.S.C. § 1355(b). As is set forth below, the properties were purchased using fraud proceeds, and they were involved in and are traceable to funds involved in, money laundering.

7. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Properties are located in this District.

## FACTS

### I.    OVERVIEW

8.    This Amended Complaint stems from an ongoing investigation into, among other things, a wire fraud scheme and money laundering conspiracy by John Roger Hill Jr. and others using a company known as Team All Trust (TAT) and related entities. Hill and his co-conspirators espouse anti-government rhetoric and frivolous anti-tax rhetoric, which they use as the basis and marketing for their business through which they charge customers to provide fraudulent tax advice and preparation services that purport to enable their customers to avoid all taxation.

9.    The wire fraud and money laundering scheme and conspiracy began prior to November or December 2022 and lasted until at least the date in which the defendant personal properties were seized in December 2025.

10.    All of the Defendant Properties were purchased with proceeds of that fraud scheme, were involved in a money laundering conspiracy or are traceable to property involved in a money laundering conspiracy, and are therefore subject to forfeiture to the United States.

11.    In addition, the purchases of the Defendant Real Properties were violations of 18 U.S.C. § 1957, which prohibits monetary transactions that include the spending of more than $10,000 of proceeds of Specified Unlawful Activity, such as Wire Fraud. Because these items were purchased in financial transactions in which more than $10,000 of fraud proceeds were spent, they are also subject to forfeiture to the United States as a result of their involvement in a violation of § 1957.

## II.    BACKGROUND OF THE SCHEME

12.    TAT is a Minnesota-based business that represents itself as a tax and trust advisory business. It engages clients who are primarily individuals, offering them a suite of services on a fee basis. These fees for services and products are often referred to as "donations" by TAT and its members. The services offered by TAT include tax preparation, trust preparation, and life insurance policies.

13.    An investigation has revealed that TAT's business is a fraud. TAT sells its clients the lie that if a person organizes a trust and operates their affairs through the trust, the person's income is no longer taxable. With that lie at TAT's foundation, TAT defrauds its clients out of money, commits tax fraud against the IRS in TAT's clients' names, then launders the proceeds of the frauds through various trusts and bank accounts. TAT's workers and clients live across the nation.

14.    Federal law enforcement agents have been investigating TAT and its leaders since 2023, when a Special Agent from the Internal Revenue Service received information from a person who had attended a TAT recruitment meeting. In that time, the investigation expanded to involve agents from FBI, IRS-Criminal Investigation, and the Treasury Inspector General for Tax Administration. Agents have interviewed multiple witnesses across several states, among other investigative steps.

### Team ALL Trust

15.    Hill operates the TAT business and brand through a series of entities and trusts. Documents from the Minnesota Secretary of State show that Hill has controlled

10

at least 53 registered entities and business names, including Team ALL Trust, Team All Outdoors, Team ALL Outdoors, and Team All-en LLC, among others.

16.    TAT is registered with the state of Minnesota for the year 2025 as an Assumed Name entity. The Minnesota Secretary of State defines Assumed Name as "Any person conducting business under a name that is not their true full name" and "A corporation, limited partnership, or limited liability company conducting business under a name other than the legal name."

17.    The "NAMEHOLDER(S)," now recognized as "applicant" by the State of Minnesota, for the TAT Assumed Name filing is "All Team Trust," "Team All Trust," and "Trust Team All." The principal place of business registered for TAT is the address of Hill's mother, who also works for TAT. The email address given for official notices is jrhilltao@gmail.com.

18.    TAT is not incorporated and operates under the name "Team All Trust" and "Team All Outdoors."

19.    Hill runs TAT and is its main salesperson.

20.    TAT does not claim to have any employees that work for the company. TAT states that anyone who works for TAT is a "trustee" and therefore not considered an employee. The "trustee" receives compensation from TAT in the form of a "donation." As identified through the investigation, the "donation" is monetary compensation for work completed by the trustee on behalf of TAT.

21.    The investigation has shown that most workers at TAT serve as tax preparers.

### Team ALL Trust Schemes

22. TAT's business is the promotion of fraudulent tax schemes. One of these schemes is creating irrevocable, non-statutory charitable (INSC) trusts for its clients as a way to avoid paying income taxes.

23. After the INSC trusts are created, a bank account is set up in the name of the trust. The clients are then told to donate all their income to the trust.

24. Even though the funds are moved to the trust, the clients still have full access to the funds and control the trusts. The clients then use the funds in the trust for their personal expenses.

25. The investigation has shown that Hill and others at TAT direct clients to "donate" all of their wages into a INSC trust which the client controls in order to effectively zero out their taxable income.

26. These supposed donations have the effect of offsetting the client's taxable income on their tax returns. By doing this, Hill claims the clients won't have any taxable income and therefore won't pay income taxes.

27. Representatives of TAT assist TAT's clients in preparing false tax returns. They also assist in the preparation of amending their clients' tax returns for three prior tax years. This frivolous charitable trust scheme is common among individuals who espouse anti-tax rhetoric.

28. TAT's business model is to charge clients a fee for TAT's services and products. These services and products include trusts, tax preparation, declaration of status filings, Montana license plates, five-star passports, and life insurance policies.

12

All the services and products TAT offers have a sovereign citizen ideology behind them and supposedly assist the purchaser in privatizing their life, purportedly sheltering them from taxes and removing themselves as a United States citizen to a "private national citizen."

29.     TAT instructs clients to pay for their services by either writing a physical bank account check, wire transferring funds, paying via online finance platforms, financing through the company (TAT) or paying with cash.

30.     Multiple witnesses have purchased a trust from TAT via check or wire transfer and were instructed to direct the payment to "TAO Capital Trust."[1] "TAO Capital Trust" has possessed checking accounts at Wells Fargo Bank and Bank of America from which many of the Defendant Properties, including the Defendant Real Properties, were purchased.

31.     The account from Wells Fargo Bank was permanently "shut down" for "business purposes" according to the investigation. Per financial reports, between December 2022 and April 2025, at least $3.5 million was deposited into TAT's bank accounts.

32.      "KOABD Legacy Trust" held a bank account at Wells Fargo until it was shut down for "business purposes." It subsequently opened an account at Bank of America. Hill is the signer on the KOABD Legacy Trust bank account.

---

[1] "TAO" is an acronym for Team All Outdoors, a company incorporated to "John Hill Jr" at an address in Coon Rapids, Minnesota.

33. The KOABD Legacy Trust bank accounts received approximately $3.1 million in transferred funds from the TAO Capital Trust bank account.

34. The KOABD Legacy Trust has paid approximately $178,000 through Zelle, an online payment network platform which allows account owners to transfer funds between bank accounts through an online network. Through the investigation, it was identified that Hill pays TAT employees from the KOABD Legacy Trust bank account utilizing Zelle. Additionally, some client payments have been deposited into the KOABD Legacy Trust bank account via Zelle.

35. Hill has withdrawn approximately $987,000 in cash from the KOABD Legacy Trust bank account between December 2022 to April 2025.

## THE DEFENDANT PROPERTIES

36. As set forth above, Hill has received substantial profits from the fraud scheme conducted by TAT and the related entities he controls.

37. The investigation has shown that since at least late 2022 through 2025, Hill's income has been virtually entirely from the fraud and money laundering scheme described herein.

### A.    The Defendant Bank Accounts

38. Hill, together with his co-conspirators, transferred and caused to be transferred the proceeds of this fraud and money laundering conspiracy into various bank accounts he owned and controlled, either directly or through trust entities. Accounts in the name of trusts were used to covertly distribute the fraud proceeds to

14

participants in this scheme, including transfers to pay participants' personal credit card bills and wire transfers to purchase vehicles for participants.

### 1. $22,216.62 seized from Bank of America Account Number 3740 0875 3852 held in the name of TAO Capital Trust, John R. Hill Jr. Trustee;

39.     On or about December 19, 2025, the United States seized $22,216.62 from Bank of America Account No. 3740 0875 3852 pursuant to a seizure warrant.

40.     This account, held in the name of TAO Capital Trust, was opened on August 23, 2024 (the "TAO Capital Trust Account"). The signor is John R Hill Jr.

41.     Between August 23, 2024 and September 17, 2025, this account received deposits totaling $2,494,036.02. The only funds known to have not been traceable to the fraud scheme are $6,005 in payments for Hill's sprinkler service.

42.     The $2,494,036.02 of deposits includes $1,932,181.40 from checks, wire transfers and payment processers that were traced directly to the wire fraud scheme. It also includes $319,400 of cash deposits, which appear to be fraud scheme proceeds consistent with TAT's acceptance of cash for its trust/fraud services. Other deposits include, among other things, proceeds of the sale of a vehicle that had originally been purchased with fraud proceeds.

43.     The investigation has shown that all funds seized from this account are traceable to the fraud scheme.

44.     Bank records show that large sums of money were transferred from this account to other accounts controlled by Hill, including into the KOABD Legacy Trust Account and a bank account ending in 4710 at Wells Fargo.

45.     As set forth above, neither TAT, TAO Capital Trust, nor KOABD Legacy Trust are legitimate companies performing legitimate business, with the exception of the very small amount of lawn sprinkler services Hill provides. The investigation has shown that these transfers are the movement—or layering—of the fraud proceeds across various accounts as part of the money laundering scheme.

### 2. $374,808.93 seized from Bank of America Account Number 3740 0047 8407 held in the name of KOABD Legacy Trust, John R. Hill Jr Trustee

46.     On or about December 19, 2025, the United States seized $374,808.93 from Bank of America Account No. 3740 0047 8407 pursuant to a seizure warrant. This account, held in the name of KOABD Legacy Trust, was opened on August 23, 2024 (the "KOABD Legacy Trust Account"). The signor is John R Hill Jr.

47.     Hill controls both the KOABD Legacy Trust Account and the TAO Capital Trust Account. As described above, TAT proceeds are deposited into the TAO Capital Trust Account initially. Next, these proceeds are transferred to the KOABD Legacy Trust Account. Finally, Hill uses the KOABD Legacy Trust Account to pay personal expenses.

48.     The KOABD Legacy Trust does not appear to perform any legitimate functions. Its primary use is to receive and move funds associated with the fraud scheme, which is its source of funds, and to promote that fraud scheme.

49.     From April 5, 2024 to September 16, 2025, $2,840,702 in total deposits were made to the KOABD Legacy Trust Account. This sum includes $2,481,359 that was transferred from TAO Capital Trust Account described above between August 23,

2025 and September 16, 2025. The remaining deposits include $120,030.59 in trust scheme income deposited directly into this account, $72,000 from Hill, $100,000 from Edina Realty, $10,000 of returned funds and $5,700 of likely cash deposits.

50.     Bank records show that Hill regularly purchases expensive cars using fraud proceeds transferred to the KOABD Legacy Trust bank account. Hill typically makes these purchases relatively quickly after funds come into the account.

51.     The investigation has shown that the conversion of fraud proceeds into other assets, such as expensive vehicles, is a method of hiding the proceeds of a crime. It is also consistent with Hill's attempts to hide his income and assets by titling property he owns into the names of various trusts he controls.

52.     The investigation has shown that all funds seized from this account were traceable to the fraud scheme and were involved in money laundering or are traceable to property involved in money laundering.

### 3. $600.00 seized from Bank of America Account Number 4350 2272 7059 held in the name of John R. Hill Jr.

53.     On or about December 19, 2025, the United States seized $600.00 from Account Number 4350 2272 7059 in the name of John R Hill Jr. (the "Hill Personal Account"). This account was opened on February 10, 2010.

54.     On September 11, 2025, John R Hill transferred $125,000 from the KOABD Legacy Trust Account to the Hill Personal Account.

17

55.    Based upon bank records obtained in this investigation, all other funds that had been deposited into this account before that date were disbursed from it before the defendant $600 was seized.

56.    As a result, the funds seized from this account were traceable to the fraud scheme and were involved in money laundering or are traceable to property involved in money laundering.

**B.    The Defendant Real Properties**

57.    Hill used proceeds of the fraud scheme to purchase two car condos in Big Lake, Minnesota. Specifically, he purchased Unit 58 and Unit 59 at the Big Lake Car Condos, which is located at 16765 198th Ave, Big Lake, Minnesota.

58.    The Big Lake Car Condos complex is owned by R. H. According to an April 30, 2024, purchase agreement between Hill and R.H., Hill agreed to purchase Unit 58 and Unit 59 under the name KOABD Legacy Trust for $525,000.

59.    The agreement states that Hill had to put down $40,000, pay $10,000 per month from May 2024 to November 2024 and then pay a balloon payment on November 1, 2024, of $425,000.  This agreement was signed by both Hill and R.H.

60.    While the agreement shows that KOABD Legacy Trust was purchasing the car condos, Sherburne County records show that Hill purchased car condo Unit 58 in the name of "16765 198th Avenue Unit 58 Trust," and car condo Unit 59 in the name of "16765 198th Avenue Unit 59 Trust."

18

61. As part of the purchase of the car condos in 2024, R.H. received a trust from TAT named Arago Legacy Trust. As stated above, Hill controls a trust named KOABD Legacy Trust.

62. Hill used the KOABD Legacy Trust bank account to make large purchases. In December 2024, two checks were written from KOABD Legacy Trust's bank account for $250,000 and $135,000. These checks were written to Arago Legacy Trust. KOABD Legacy Trust's bank account also made wire transfer payments of $3,000, $3,000 and $2,000 to the Big Lake Car Condos in December 2024. These transfers mention that they were loan payments.

63. The $250,000 check and the $135,000 checks were both funded with proceeds traceable to the wire fraud scheme described above.

64. Those funds were also involved in, and were used to facilitate, the money laundering conspiracy.

65. In addition, both of those checks are financial transactions through which more than $10,000 of fraud proceeds were spent through a financial institution.

66. Both checks, therefore, constitute money laundering violations under 18 U.S.C. § 1957.

67. As a result, the Defendant Real Properties are subject to forfeiture because they constitute or are derived from proceeds of wire fraud, and because they were involved in money laundering transactions or are traceable to such violations.

19

## C.    The Defendant Vehicles

68.    On December 11, 2025, agents executed search warrants at Big Lake Car Condo Unit 58 and Unit 59, where they found and seized several vehicles (including motorized scooters) belonging to Hill through trusts he controlled. The vehicles seized from that location on that date include those listed as Defendants f-s above.

69.    Each of those vehicles was titled to a trust created by TAT or a related entity with the sole exception of the 2021 Land Rover Westminster, which was titled to Don Stables, Jr. The investigation has shown that Hill invested a significant sum of money in Stables' business when it was in bankruptcy proceedings. Hill has represented that he is holding it as security for a financial loan.

70.    The trusts that hold titles to the other defendant vehicles include Team All Outdoors LLC and KOABD Legacy Trust, which are entities Hill controls and through which he operates his fraud and/or money laundering schemes. Other vehicle titles reference trusts that essentially repeat the vehicle name, such as "23 Yamaha YW125 MC004134 Trust," for example.

71.    Such single-item trusts are a frequent occurrence in Hill's fraud and money laundering schemes, which involve the creation of trusts to obscure ownership and hide assets in an effort to avoid taxation or creditors.

72.    Law enforcement seized a 2024 GMC Sierra 1500 and a 2023 GMC Yukon XL 1500 Denali (items r and s above) from 724 Lexington Parkway S., Saint Paul, MN when that address was searched pursuant to a warrant on December 11, 2025.

73. Those two vehicles are titled to "Team All Outdoors, LLC," which is one of the names under which TAT operates. Those two vehicles appear to have been used by Jovanna Funk, who is Hill's sister.

74. Funk resides at 724 Lexington Parkway. As noted above, that address was searched pursuant to a warrant on or about December 11, 2025.

75. Funk worked for TAT. Upon information and belief, she purported to be a "trustee" rather than an employee.

76. Funk served multiple roles at TAT. Her duties included tax preparation services. She also prepared trusts for TAT. She and Theresa Hill served as the "hub" of TAT's tax services.

77. Funk also served as the underwriter/editor of the trusts for TAT. TAT's tax preparation services operated primarily out of Funk's residence at 724 Lexington Parkway.

78. Funk is a co-conspirator of Hill's, and her participation in the fraud and money laundering schemes was her primary source of income in the years prior to the seizure of the two vehicles from her residence. Proceeds of the fraud and money laundering schemes were used to pay for these vehicles.

79. All of the other defendant vehicles, items f-q above, were seized from the car condo units described above.

80. The investigation has shown that Hill and his co-conspirators' interest in each of the vehicles referenced above was traceable to the fraud scheme. They were all purchased during the fraud and money laundering schemes described above, with the

exception of the Range Rover—although Hill obtained his interest in it during that same time period.

81.    As noted above, Hill and Funk obtained the overwhelming majority of their income in that time period through the fraud scheme. And the trusts and other business entities they control were funded entirely by proceeds of the fraud scheme.

82.    The investigation has shown that the vehicles were involved in the money laundering conspiracy and are traceable to property involved in money laundering.

**D.    The Miscellaneous Equipment from the Car Condominium Units**

83.    On December 11, 2025, law enforcement seized a Raptor Supercharger from 16765 198th Avenue, Unit 59, Big Lake, MN.

84.    On December 11, 2025, law enforcement seized the following items from 16765 198th Avenue, Unit 58, Big Lake, MN:

1.  WeCreat Vision 40W Laser Cutter;
2.  WeCreat lnfared Laser and Solder Fume Extractor;

85.    The investigation has shown that these items were acquired while Hill's fraud and money laundering scheme were ongoing, and they were held at the Car Condos Hill owned through trusts, and which he controlled. Because nearly all of Hill's income during that time was derived from his fraud and money laundering schemes, the investigation has shown that these items are proceeds of those schemes.

**E.    The Miscellaneous Firearms**

86.    On December 11, 2025, agents executed a search warrant at 23100 Edison Court, Rogers, Minnesota, which was Hill's residence. Officers located and

22

seized personal property belonging to Hill.

87.     The property seized from Hill includes the firearms and accessories identified in item v above.

88.     Officers also seized the rifle listed as item cc from 16765 198th Avenue Unit 58, Big Lake, MN in a search on that same date.

89.     The investigation has shown that Hill purchased those firearms while his fraud and money laundering conspiracy was ongoing. Because nearly all of Hill's income during that time was derived from his fraud and money laundering schemes, the investigation has shown that these items are proceeds of, and were involved in, those schemes.

**F.     The Currencies and Jewelry Seized from Hill's Residence**

90.     Officers also seized sums of various currencies from Hill's Edison Court residence during the execution of a search warrant on December 11, 2025.

91.     These currencies are listed as items x-bb above.

92.     As set forth above, the overwhelming majority of Hill's income since 2022 has been from his fraud and money laundering scheme, and he accepts cash payments as part of this scheme.

93.     In addition, the collection of certain foreign currencies, including those seized from Hill's residence, is common among sovereign citizens.

94.     Item w above, two pairs of diamond stud earrings, were also seized during the same search of Hill's residence. Evidence shows that those items were

23

purchased in or after 2024, when virtually all of Hill's income was from the fraud scheme and money laundering conspiracy.

## BASIS FOR FORFEITURE

### COUNT 1 (All Defendants)
### 18 U.S.C. § 981(a)(1)(C) for Violations of 18 U.S.C. § 1343

95.     The actions described above constitute wire fraud in violation of 18 U.S.C. § 1343.

96.     Civil forfeiture of the proceeds of a wire fraud scheme is authorized by 18 U.S.C. § 981(a)(1)(C).

97.     More specifically, § 981(a)(1)(C) authorizes forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(A) defines the term "specified unlawful activity" as including "any act or activity constituting an offense listed in section 1961(1) of this title." And 18 U.S.C. § 1961(1) includes violations of 18 U.S.C. §§ 1343 in its definition of racketeering activity.

98.     The Defendant Properties constitute, and are derived from, proceeds of a wire fraud scheme, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### COUNT 2 (All Defendants)
### 18 U.S.C. § 981(a)(1)(A) – for Violations of 18 U.S.C. § 1956

99.     Pursuant to 18 U.S.C. § 981(a)(1)(A), the United States is authorized to

24

forfeit "any property, real or personal, involved in a transaction, or attempted transaction, in violation of section 1956 … of this title, or any property traceable to such property."

100.   As set forth above, Hill and others are engaged in money laundering activities and a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. He and others acting in concert with him have conspired to knowingly conduct, and attempt to conduct, financial transactions with proceeds of specified unlawful activity (Wire Fraud) knowing the transactions were designed to conceal or disguise the nature, location, source, ownership of control of those proceeds.

101.   Hill and others acting in concert with him have also conspired to knowingly conduct, and attempt to conduct, financial transactions with proceeds of specified unlawful activity (Wire Fraud) intending to evade taxes and to promote the specified unlawful.

102.   The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it was involved in transactions, or attempted transactions, in violation of 18 U.S.C. § 1956 or is traceable to such property.

### COUNT 3 (Defendant Real Properties)
### 18 U.S.C. § 981(a)(1)(A) – for Violations of 18 U.S.C. § 1957

103.   Pursuant to 18 U.S.C. § 981(a)(1)(A), the United States is authorized to forfeit "any property, real or personal, involved in a transaction . . . in violation of section 1957… of this title, or any property traceable to such property."

25

104.   18 U.S.C. § 1957(a) prohibits among other things, knowingly engaging in a monetary transaction in criminally derived property of a value of more than $10,000, when such property derived from a specified unlawful activity.

105.   Wire fraud is specified unlawful activity pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

106.   The Defendant Real Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they were each involved in, or are traceable to property involved in, money laundering transactions in violation of 18 U.S.C. § 1957.

**CLAIM FOR RELIEF**

107.   The United States requests notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant Properties, that the Defendant Properties be forfeited and condemned to the United States of America, that the United States be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated: 6/11/2026

DANIEL N. ROSEN
United States Attorney

*s/Craig Baune*
BY: CRAIG R. BAUNE
Attorney ID No. 331727
Assistant United States Attorneys
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
612-664-5600
craig.baune@usdoj.gov

# VERIFICATION

I, Michael Leach, verify and declare under penalty of perjury as follows:

I am and have been a Special Agent with the Internal Revenue Service, Criminal Investigations (IRS-CI) since 2008. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as an IRS-CI Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 6/11/2026

*s/Michael Leach*
MICHAEL LEACH
Special Agent, IRS-CI

27